IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | |
|---|---|
| **DEWEY L. HASTY,** § | |
| § | |
| Plaintiff, § | |
| § | |
| vs. § | Civil Action No. 1:04-CV-0262-C |
| § | ECF |
| § | Referred to the U.S. Magistrate Judge |
| **JO ANNE B. BARNHART,** § | |
| **Commissioner of Social Security,** § | |
| § | |
| Defendant. § | |

**REPORT AND RECOMMENDATION**

This case is before the court upon Plaintiff's complaint filed December 13, 2004, for judicial review of the administrative decision of the Commissioner of Social Security denying Plaintiff's applications for a period of disability and disability insurance benefits under Title II of the Social Security Act. Plaintiff filed a brief in support of her complaint on September 6, 2005, Defendant filed her brief on October 4, 2005, and Plaintiff filed her reply on October 20, 2005. The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this matter to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment. This court, having considered the pleadings, the briefs, and the administrative record, recommends that the United States District Judge affirm the Commissioner's decision and dismiss the complaint with prejudice.

**I.   STATEMENT OF THE CASE**

Plaintiff filed an application for a period of disability and disability insurance benefits on September 3, 2002, alleging disability beginning June 11, 2002. Tr. 14, 246-48. Plaintiff's

applications were denied initially and upon reconsideration. Tr. 14, 249-52, 254-58. Plaintiff filed a Request for Hearing by Administrative Law Judge on January 12, 2003, and this matter came for hearing before the Administrative Law Judge ("ALJ") on October 7, 2003. Tr. 14, 26, 28-50. Plaintiff, represented by a non-attorney, testified in his own behalf. Tr. 31-50. The ALJ issued a decision unfavorable to Plaintiff on November 25, 2003. Tr. 11-18.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act. He found that Plaintiff met the disability insured status requirements on June 11, 2002, through the date of his decision and that Plaintiff had not engaged in substantial gainful activity at any time since June 11, 2002. Tr. 14. He found that Plaintiff has "severe" impairments, including degenerative arthritis in his lumbar spine and shoulders and insulin-dependent diabetes mellitus. Tr. 15. He further found that Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1. Therefore, the ALJ was required to determine whether Plaintiff retained the residual functional capacity ("RFC") to perform his past relevant work or other work existing in the national economy.

The ALJ acknowledged that in making the RFC assessment, he must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence, based on the requirements of Social Security Ruling 96-7p. Tr. 16.

The ALJ found that based on the evidence in the record, Plaintiff's statements concerning his impairments and their impact on his ability to work were not entirely credible. *Id.*

The ALJ found that Plaintiff retained the RFC to perform the full range of light work except that he can only occasionally stoop and crouch. Tr. 17. He found that Plaintiff's past relevant work

was not precluded by the above limitations. Tr. 18. He found that Plaintiff's impairments do not prevent him from performing his past relevant work and, therefore, Plaintiff was not disabled. *Id.*

Plaintiff submitted a Request for Review of Hearing Decision/Order on January 22, 2004. Tr. 9-10. The Appeals Council issued its opinion on March 19, 2004, indicating that although it had considered the contentions raised in Plaintiff's Request for Review, it nevertheless concluded that there was no basis for changing the ALJ's decision and denied Plaintiff's request. Tr. 5-8. The ALJ's decision, therefore, became the final decision of the Commissioner.

On August 18, 2004, Plaintiff commenced this action which seeks judicial review of the Commissioner's decision that Plaintiff was not disabled.

## II.  STANDARD OF REVIEW

An individual may obtain a review of the final decision of the Commissioner by a United States District Court. 42 U.S.C. § 405(g). The court's review of a denial of disability benefits is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002)(citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). The court will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson,* 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (quoting *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).

In order to qualify for disability insurance benefits or supplemental security income, a claimant has the burden of proving that he or she has a medically determinable physical or mental

impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. *Newton,* 209 F.3d at 452; *see* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1).

The Commissioner follows a five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson*, 309 F.3d at 271; *Newton*, 209 F.3d at 453. In this case, the ALJ found at step 4 that Plaintiff was not disabled because he was able to return to his past relevant work as a cable splicer. Tr. 14, 18.

### III.  DISCUSSION

**1.  Whether the ALJ committed legal error by failing to consider whether Plaintiff retained the capacity to do the utility pole climbing job and cope with exposure to weather required of his past work, both as actually and as generally performed.**

Plaintiff first argues that the ALJ committed legal error by failing to consider whether Plaintiff retained the capacity to do the utility pole climbing job and cope with the exposure to weather required of his past work, both as actually and as generally performed. Pl. Brief at 7. Plaintiff specifically claims that the ALJ took no vocational testimony, made no findings with regard to the functional demands of Plaintiff's past work as a cable splicer that were implicated by his impairments, and did not perform the function-by function analysis directed by SSR 82-62. Instead, Plaintiff argues, the ALJ erred by simply concluding that Plaintiff could generally perform a range of light work and therefore could perform his specific job as a cable splicer.

The ALJ determined at step 4 of the five-step sequential evaluation process that Plaintiff retained the RFC to perform his past relevant work and that Plaintiff was, therefore, not disabled. Tr. 14, 18. SSR 82-61 provides two[1] primary tests for determining whether a claimant retains the

---

[1]   SSR 82-61 also refers to another test for determining whether a claimant retains the capacity to perform his past relevant work. This test is based on a broad generic classification of a

capacity to perform his past relevant work. A claimant retains the capacity to perform his past relevant work if he retains the capacity to perform (1) the particular functional demands and job duties peculiar to an individual job as he actually performed it or (2) the functional demands and job duties of the job as ordinarily required by employers throughout the national economy. In this case the ALJ specifically referred to Plaintiff's own descriptions of his past work as a cable splicer as Plaintiff actually performed it. Tr. 18. In Plaintiff's most recent description, dated September 18, 2002, Plaintiff reported that he had used a bucket truck for all work; that he did no climbing at all; that he carried equipment from truck to pole maybe 10 feet, lifted a maximum weight of 20 pounds, and frequently lifted less than 10 pounds; and that each day he walked one hour, stood two hours, sat five hours, and stooped, kneeled, crouched, crawled, handled big objects, and wrote, typed, or handled small objects about one-half hour each. He supervised two people for three hours each day, wrote reports or completed forms, used technical knowledge and skills, and used machines, tools, or equipment. Tr. 75. Thus, there was substantial evidence for the ALJ to determine that Plaintiff's past work as a cable splicer, as Plaintiff actually performed it, never included climbing poles, and the ALJ, therefore, did not err by failing to consider whether Plaintiff retained the capacity to climb poles.

Moreover, the description of the cable splicer job from the DOT as the job is ordinarily performed for employers throughout the national economy does not indicate, as claimed by Plaintiff, that the job always requires the climbing of poles. Instead, the DOT provides that the job may require the climbing of utility poles or towers, the utilization of truck-mounted lift buckets, *or*

---

job, such as a "delivery job" or "packaging job." The jobs within such a broad classification may have a common characteristic, but they often have quite different functional demands and duties requiring varying abilities and job knowledge. Thus, the rule states that a finding that a claimant has the capacity to perform his past relevant work based on this type of broad job classification is likely to be fallacious or unsupportable. No such broad classification is involved in this case.

descending into sewers and underground vaults where cables are located. *See* Code 829.361-010. Thus, even the DOT description recognizes that a cable splicer may utilize a lift bucket, as Plaintiff said that he did, instead of climbing poles. The ALJ did not err, therefore, by failing to consider whether Plaintiff retained the capacity "to do the utility pole climbing job" because Plaintiff used a bucket truck for all work and did no climbing at all. Whether Plaintiff could climb a pole is, therefore, irrelevant in determining whether Plaintiff could do his past work as he actually performed it.

Plaintiff also argues that the ALJ failed to consider whether Plaintiff retained the capacity to cope with the exposure to weather required of a cable splicer. Pl. Brief at 7. He also alleges that he could reasonably be impaired in his ability to "deal with excessive heat of a Texas summer." Pl. Brief at 10. The DOT does describe a cable splicer job as involving exposure to weather from one-third to two-thirds of the time. On the other hand, the DOT does not describe the job as involving exposure to excessive or extreme heat. On the contrary, the DOT description provides that the condition of extreme heat does not exist in a cable splicer job. This would be especially true where all of the work is done out of a bucket truck, as was the case with Plaintiff's job. Tr. 75.

With respect to the job as Plaintiff actually performed it, a concern regarding heat issues, according to the record, began in August 2001. Tr. 122. On August 13, 2001, Plaintiff presented to Barry L. Moak, M.D., Plaintiff's primary treating physician, with complaints of overheating at work. Tr. 122. Dr. Moak initially assessed his condition as likely heat exhaustion. *Id.* Dr. Moak followed up with tests and additional appointments and, by August 20, had diagnosed Plaintiff with non-insulin-dependent diabetes mellitus. Tr.118. Moak prescribed medication, placed Plaintiff on a diet, and sent Plaintiff to a diabetes self-management training program. Tr. 117-18. Dr. Moak signed a statement indicating that Plaintiff could return to work with restrictions, including no excessive heat, beginning September 2, 2001, and could return to full time work and full duty (with no restrictions

specified) on September 16. Tr. 110, 112. By October 8 Dr. Moak reported that Plaintiff was doing well, he felt good, his physical exam was within normal limits, his blood pressure was just a little high, and Moak would continue to review Plaintiff's medications for possible changes. Tr. 113. On May 2, 2002, Dr. Moak reported that Plaintiff's blood sugar was still running between 300-400, that new medication was prescribed, and that Plaintiff would receive education regarding diet and the administration of insulin. Tr. 101. Plaintiff, now on insulin, was seen by Dr. Moak for a follow-up on June 3, 2002. Dr. Moak reported that Plaintiff was feeling much, much better, that his blood sugars had been between 98 and 140 all week, and that his physical examination was within normal limits. Tr. 97. On June 10, 2002, Dr. Moak signed a statement that plaintiff could return to work on light duty (with no other restrictions specified). Tr. 96. Plaintiff testified on October 7, 2003, that the cold and heat he worked in "wasn't too bad until . . . [he contracted] diabetes." Tr. 37. He testified that he had his diabetes pretty well under control and that his sugar levels were running from 90 to 120 which, he thought, was real good. Tr. 38. Dr. Moak restricted Plaintiff to working without exposure to excessive heat for two weeks in September 2001 before he released him to full time work and full duty. Tr. 110, 112. That restriction was imposed at a time when Dr. Moak first diagnosed Plaintiff with diabetes and was beginning Plaintiff's treatment. There is no other medical evidence in the record that supports Plaintiff's claim that he could not cope with the exposure to weather while working out of a bucket truck as a cable splicer. The only evidence suggesting that Plaintiff's past work exposed him to excessive or extreme heat, or heat that he could not tolerate, is his own statement made in his Disability Report that he stopped working because he "[c]ouldn't stand the heat." Tr. 83. He also stated in the same report that he stopped working because he "[c]ouldn't climb the poles," even though he reported a month later that he did no climbing at all in his past job. Tr. 75, 83. The ALJ gave great weight to Dr. Moak's opinions regarding Plaintiff's ability to return to work and found Dr. Moak's opinions to be well supported and not inconsistent

with other substantial evidence in the record. Tr. 17. He also relied on the state agency medical consultants' findings that Plaintiff retained the RFC for light work and determined that these evaluations were generally consistent with the remaining credible evidence. *Id.* Each of the consultants' assessments reported that no environmental limitations were established. Tr. 209, 221. The ALJ also determined, in making his credibility findings, that there was no evidence of any severe side effects from Plaintiff's diabetes, such as severe peripheral neuropathy, retinopathy, or end-organ damage, that would interfere with Plaintiff's ability to work. Tr. 16. The court finds that there is substantial evidence in the record to support the ALJ's determination that, once Plaintiff's diabetes was controlled by insulin, Plaintiff was not limited by any exposure to weather that may result from his performance of his cable splicer job conducted from a bucket truck.

Moreover, Plaintiff had the burden of proof to show that he was unable to do his PRW. *Hollis v. Bowen,* 837 F.2d 1378, 1386 (5th Cir. 1988). Substantial evidence supports the ALJ's determination that Plaintiff did not meet this burden.

Thus, Plaintiff's argument that the ALJ committed legal error by failing to consider whether Plaintiff retained the capacity to do the utility pole climbing job and cope with exposure to weather required of his past job is without merit.

Next, Plaintiff claims under Point 1 that the ALJ erred by taking no vocational testimony, by making no findings with regard to the functional demands of Plaintiff's past work that were implicated by his impairments, and by not performing the function-by-function analysis directed by SSR 82-62. Whether a vocational expert will be called in a particular case is in the ALJ's discretion. *Jones v. Heckler*, 702 F.2d 616, 622 (5th Cir. 1983). "Vocational testimony is not necessary if the administrative law judge concludes that a claimant could return to his former occupation." *Williams v. Califano,* 590 F.2d 1332 (5th Cir. 1979). When an ALJ finds that a claimant is capable of performing his past relevant work, the lack of expert testimony becomes irrelevant. *Harper v.*

*Sullivan,* 887 F.2d 92, 97 (5th Cir. 1989). Since the ALJ found in this case that Plaintiff could perform his past relevant work, the ALJ did not err by failing to call a vocational expert.

Plaintiff's claim that the ALJ erred by failing to make findings with regard to the functional demands of Plaintiff's past work that were implicated by Plaintiff's impairments and by failing to perform the analysis directed by SSR 82-62 is also without merit. The ALJ referred to and relied on the function-by-function assessments made by state agency medical consultants regarding Plaintiff's exertional limitations in determining Plaintiff's RFC. Tr. 17. Such reliance has been approved by the Fifth Circuit in lieu of requiring an ALJ to engage in an explicit function-by-function analysis in his decision. *Onishea v. Barnhart,* 116 Fed. Appx. 1, 2004 WL 1588294 (5th Cir. July 16, 2004). The ALJ found that these assessments were supported by the objective medical evidence in the record at that time and were generally consistent with the remaining credible evidence. Tr. 17. Further, the ALJ reviewed the other medical evidence in the record relating to Plaintiff's impairments. Tr. 15-16. He found that Plaintiff had medical impairments that could be expected to cause the pain and functional limitations alleged but that the claimed severity of the limitations and pain were not reasonably supported by the credible medical evidence. Tr. 16. He observed, for example, that Plaintiff's back was described as merely "age-related generalized spondyloarthropathy" and no surgery had been recommended. *Id.* Further, there was no evidence of any severe side effects from Plaintiff's diabetes that would interfere with his ability to work. *Id.* He also observed that on June 10, 2002, one day before the alleged onset date, Plaintiff's Dr. Moak stated that Plaintiff could return to work at light duty. *Id.* The ALJ found that, even though Plaintiff's impairments may impose some work-related limitations, there was no evidence that his impairments were disabling. Tr. 17. Further, the ALJ reviewed Plaintiff's descriptions of his past work as a cable splicer with the assessments of the state agency medical consultants regarding Plaintiff's residual functional capacity and found that Plaintiff could do his past work as Plaintiff

-9-

described it. Tr. 17-18. The ALJ concluded that Plaintiff's past work required light work (lifting no more than 20 pounds at a time with frequent lifting of up to 10 pounds, and standing and walking, off and on, for a total of six hours out of an eight hour workday) with only occasional stooping and crouching and that Plaintiff retained the RFC to perform that work. Tr. 17-18.

Based on his analysis, the ALJ found that Plaintiff retained the RFC to do his actual past work as Plaintiff has described it, which consists of light work with only occasional stooping and crouching. The court finds that the ALJ did not err in failing to make findings with regard to the functional demands of Plaintiff's past work that were implicated by his impairments. This court finds that substantial evidence supports these findings.

**2.     Whether Plaintiff was prejudiced by the ALJ's failure to perform a proper Step Four analysis because a reasonable adjudicator performing a proper evaluation could conclude on this record that Plaintiff could no longer perform the climbing and environmental demands of his past work, and the grids dictate a finding of disability as there is no evidence of transferable skills.**

Plaintiff argues that the ALJ overlooked evidence showing that Plaintiff had climbing limitations that prevented him from performing the climbing demands of the cable splicer job. As discussed under Point 1 above, there were no climbing demands in the job as Plaintiff actually performed it. Plaintiff's most recent description of the job as he performed it admitted that the job involved no climbing. Thus, it cannot be said that the ALJ erred in failing to consider evidence showing that Plaintiff had climbing limitations. Climbing limitations are not an issue where a job has no climbing requirements. Plaintiff further argues that this "error" is not harmless because a reasonable adjudicator considering this issue could well conclude that Plaintiff was limited in his ability to climb and in his ability to deal with summer heat and could conclude that such limitations would preclude performance of his past work. Since the court has determined, as discussed under Point 1, that there is no error in overlooking any climbing or extreme heat limitations, neither harmless error nor prejudice is an issue and this argument is without merit.

Plaintiff next argues that Plaintiff has several medical problems that could reasonably impair his ability to climb utility poles and deal with the excessive heat of a Texas summer. He claims that he has diabetes with early peripheral neuropathy with loss of sensation and pain in the feet. He has degenerative arthritis in the spine and shoulder, with a bulging disc, marked narrowing, and a loss of motion in the shoulders. He is obese. Again, Plaintiff is basing his argument on job requirements that this court has found, and discussed under Point 1, not to exist in Plaintiff's PRW, that is, the climbing of poles and the exposure to excessive or intolerable heat. Plaintiff's PRW as he performed it did not include the climbing of utility poles, and Plaintiff has not shown that his PRW out of a bucket truck exposed him to excessive heat.

Plaintiff next claims that the record shows that he is obese, but the ALJ did not mention his weight or explain why he did not consider how it might impact his ability to perform such tasks as climbing a telephone pole when coupled with his degenerative arthritis in his spine. It is true that obesity is still a factor to be considered, even after the deletion of Listing 9.09. However, Plaintiff did not meet his burden of showing how his obesity affected his other conditions. SSR 00-3p specifically states, "we will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record." Since Plaintiff has not shown any evidence in the record which suggests that his obesity affects his other conditions, there was no requirement for the ALJ to address Plaintiff's obesity. Plaintiff's claim thus fails on this point.

Finally, Plaintiff's point that the grids would dictate a finding of disability because there was no evidence of transferable skills is without merit because the court has determined that substantial evidence supports the ALJ's decision that Plaintiff has retained the RFC to do his past work. There

is no requirement for evidence of transferable skills where a claimant has retained the RFC to do his past work.

**3.     Whether the ALJ's credibility determination properly takes into account Plaintiff's work history and is based in part on an unjustified assumption that Plaintiff did not have medical treatment where the record shows that he did.**

Plaintiff first argues under this point of error that, even if the ALJ's credibility determination was justified, his failure to address the question of whether Plaintiff retained the capacity to perform the climbing and environmental demands of his past work undermines his implicit conclusion that Plaintiff's medical retirement was not legitimate because he still could have performed his work as a cable splicer. As previously noted, discussed, and determined under Point 1, however, there is no legitimate issue in this case regarding the capacity to climb because Plaintiff's PRW as he actually performed it did not include any climbing; and this court has found under Point 1 that substantial evidence supports the ALJ's determination that Plaintiff was not limited by any exposure to weather that may result from his PRW as a cable splicer and that Plaintiff did not carry his burden to prove that he could not tolerate the environmental demands of his past work.

Plaintiff further argues that his "exemplary work history" of 27 years at the same job mitigates against a conclusion that he would falsely claim to be unable to perform his job. Pl. Brief at 12. However, a claimant's work history is only one of many factors evaluated by an ALJ in determining credibility. SSR 96-7p provides that the following factors should be addressed when evaluating credibility:

> Assessment of the credibility of an individual's statements about pain or other symptoms and about the effect the symptoms have on his or her ability to function must be based on a consideration of all of the evidence in the case record. This includes, but is not limited to:
>
>   - The medical signs and laboratory findings;
>
>   - Diagnosis, prognosis, and other medical opinions provided by treating or examining physicians or psychologists and other medical sources; and

> - Statements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work.

SSR 96-7p; 20 C.F.R. § 404.1529.

In this case the ALJ stated that he considered all of the evidence in the record. Tr. 14. He discussed the medical signs and laboratory findings, noting that the objective medical evidence revealed degenerative changes in Plaintiff's spine and shoulders but that physical examinations showed no abnormalities except for some limited shoulder range of motion. Tr. 15-17. He did consider that no medical records existed after September 2002, but that was only one of many factors considered. *Id.* He considered Plaintiff's testimony, he heard Plaintiff's testimony regarding his prior work record and his activities of daily living, he considered the treating physician's prognoses and medical opinions, and he considered Plaintiff's treatment for his ailments and his response to such treatment. Tr. 15-17, 31-33, 35, 46, 48. He evaluated the objective medical evidence and gave specific reasons for finding that Plaintiff's testimony and subjective complaints were not credible. Tr. 15-17. He considered discrepancies between Plaintiff's assertions and the information contained in the record. Tr. 16-17, 181, 225-26. In short, the ALJ discussed and gave sufficient reasons and examples for his determination that the severity of functional limitations and pain claimed by Plaintiff was not reasonably supported by the credible medical evidence.

The ALJ considered all of the evidence in the record and thus considered Plaintiff's 27 years at the same job. The ALJ also considered and specifically referred to the following matters in support of his opinion that Plaintiff's claims were not entirely credible: Plaintiff testified that he experiences shoulder and back pain so severe that it precludes all work. Diagnostic imaging shows degenerative changes in his spine and shoulders, but his physical examinations show no abnormalities except for some limited shoulder range of motion. His back impairment was described

as merely age-related generalized spondyloarthropathy. No surgery was recommended for his back. There is no evidence of any severe side effects of Plaintiff's diabetes. There is some evidence that Plaintiff exaggerates his symptoms. For example, one doctor noted that it was difficult to examine him because he claims to be sore everywhere, and, before the doctor touches him, he started tightening his muscles and jumping all over, throwing various muscles in spasm. He demonstrated a negative straight leg raising while sitting and his attention was diverted, but while supine he kept everything stiff and was unable to do the straight leg raising test. He had no sensory loss when his attention was diverted. Also, a few weeks prior to his alleged onset date, his doctor noted that Plaintiff had made some significant improvement in his diet and exercise and that he was feeling much, much better. The day before his alleged onset date, Dr. Moak, his treating physician, stated that Plaintiff could return to work. There is no evidence of any injury or other exacerbation of his symptoms at that time to support any other limitations in his ability to work. His shrapnel injury was found to have only a minimal effect on his activity. His doctors have found little evidence of disability. Some of his reports to his doctors contradict his claim of disability. Tr. 16. Even though Plaintiff's long work history may mitigate against a determination that Plaintiff's claims are not entirely credible, it is clear that the ALJ considered the entire record in making this determination, and the court finds that the determination is supported by substantial evidence.

Finally, Plaintiff argues that the ALJ assumed that the reason there was no medical evidence in the record regarding Plaintiff's back impairment after September 2002 was that it was not severe enough to require medical treatment. Pl. Brief at 13. The ALJ did state that there was no evidence that Plaintiff had sought treatment for his back or shoulder pain since September 2002, which indicates that Plaintiff does not consider it so severe as to require medical intervention. Tr. 17. Plaintiff alleges, however, that other information in the record shows that Plaintiff did receive treatment for his back impairment from the VA hospital and from Dr. Moak in November 2002. Pl.

Brief at 13. This information comes from Plaintiff's Reconsideration Disability Report dated November 6, 2002, in which Plaintiff reports that he saw Dr. Moak on November 6, 2002, and was seen at the Veterans Medical Center on November 5, 2002, for tests and medications for diabetes and back pain. Tr. 54-58. However, the transcript does not contain any actual medical records for those dates or, with respect to back pain, for any other date after September 2002. Plaintiff argues that the question is whether the ALJ was justified in concluding that Plaintiff had not received treatment for his back after September 2002. Neither Plaintiff nor his representatives ever submitted any medical records regarding treatment for back pain in November 2002 or any other date after September 2002.

Whether Plaintiff received his last treatment for back and shoulder pain in September or November would logically have little effect on the ALJ's inference as to how severe Plaintiff considered his back and shoulder impairments to be. Moreover, as recited above, the ALJ gave many other reasons, supported by the medical records, for his credibility determination. The ALJ's "evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence." *Villa v. Sullivan,* 895 F.2d 1019, 1024 (5th Cir. 1990). It is clear in this case that substantial record evidence supports the ALJ's credibility determination, even if Plaintiff did not receive his last treatment for his back and shoulder in September 2002. Moreover, where "the record evidence is ample to support the ALJ's credibility determinations . . . without regard to the objectionable portions of" the evidence, the court will conclude that there is no prejudice resulting from any inconsistency between the objectionable portions and the rest of the evidence. *Carey v. Apfel,* 230 F.3d 131, 143 (5th Cir. 2000). For these reasons, the court will not reverse the ALJ's credibility determination.

### IV.   CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, this court recommends that the United States District Judge affirm the Commissioner's decision and dismiss the Plaintiff's complaint with prejudice.

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1) and Rule 4 of Miscellaneous Order No. 6, For the Northern District of Texas, any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within 11 days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150, 106 S. Ct. 466, 472 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within 11 days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the United States Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

DATED this 16th day of August, 2006.

_____
**PHILIP R. LANE**
**UNITED STATES MAGISTRATE JUDGE**